THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| JULIE EVANS, | : | |
| | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | Civil Action |
| | : | No. 5:08-cv-181 (CAR) |
| MICHAEL J. ASTRUE, | : | |
| COMMISSIONER OF | : | |
| SOCIAL SECURITY, | : | |
| | : | |
|     Defendant. | : | |
| _____ | : | |

## ORDER

In this case, Plaintiff appeals from the denial of her application for a period of disability, disability insurance, and Supplemental Security Income benefits by the Commissioner of Social Security. She has exhausted her administrative remedies, having submitted her application to an Administrative Law Judge ("ALJ") for hearing and to the Appeals Council for review. Her claim for benefits was denied at each level, and Plaintiff now seeks judicial review of the Commissioner's decision pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g). Upon review of the administrative record and the arguments of the parties, and for the reasons set forth below, the final decision of the Commissioner is hereby **AFFIRMED**.

**I.    Procedural Background**

In her application for benefits, Plaintiff stated that she had been unable to work since December 1, 2003, due to a bipolar mental disorder.  R.81.  She did not contend that she had any physical limitations on her ability to work.  Following a hearing and review of Plaintiff's medical records, the ALJ determined that Plaintiff had "the following severe impairments: bipolar disorder with deficient personality and substance abuse in remission."  R.20.  Despite these severe impairments, the ALJ found that Plaintiff retained the residual functional capacity to "perform work at all exertional levels limited to simple, unskilled, routine tasks with only incidental contact with the public."  Id.  With the assistance of testimony from a vocational expert, the ALJ then concluded that there were jobs existing in significant numbers in the national economy that Plaintiff could perform, given her age, education, work experience, and residual functional capacity.  R.24.

After her application was denied by the ALJ, Plaintiff submitted her claim to the Appeals Council.  In support of her appeal, she submitted additional evidence that was not before the ALJ.  This evidence consisted of medical records from RiverEdge Behavioral Health Center, dated May 9, 2007 through November 1, 2007, and a "Mental Questionnaire" filled out by her treating psychiatrist.  In the Notice of Appeals Council Action of March 27, 2008, the Appeals Council noted that it had

considered this additional evidence but found that there was no reason to review the ALJ's decision. R.4.

## II.     Issues for Judicial Review

In the present action, Plaintiff raises two issues. First, she contends that the ALJ's decision was not supported by substantial evidence because the ALJ improperly discounted the opinion of Plaintiff's treating physician as to how her psychiatric condition affected her ability to work. Second, Plaintiff contends that the Appeals Council should have remanded the case to the ALJ so that he could consider the new evidence submitted in support of her appeal. The Court disagrees, and finds that the ALJ's decision was supported by substantial evidence in the record as a whole, including the additional evidence that was submitted to the Appeals Council. Because the new evidence did not significantly alter the balance of evidence that was before the ALJ, the Appeals Council had no obligation to remand the case to the ALJ for further consideration.

### A.     Standards for review of benefits decisions

Judicial review of the decisions of the Social Security Commissioner is narrow in scope. The factual determinations of the Commissioner are entitled to deference, and the Court may not decide the facts anew, make credibility determinations, or re-weigh the evidence. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).

Instead, the Court may only review the record to determine whether the Commissioner's decision is based upon the appropriate legal principles and is supported by substantial evidence. Id.

With regard to findings of fact, the findings of the Commissioner (through the ALJ) are entitled to deference. Courts reviewing benefits decisions may not decide facts, reweigh evidence, or substitute their own judgment for the judgment of the ALJ. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). Credibility determinations are left to the Commissioner and not to the courts. Carnes v. Sullivan, 936 F.2d 1215, 1219 (11th Cir. 1991). It is also left to the ALJ to resolve conflicts in the evidence. Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). The only question is whether the Commissioner's factual determinations are supported by "substantial evidence." Substantial evidence "is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Moore, 405 F.3d at 1211. The ALJ's findings of law are not subject to the same deference. On judicial review, courts must determine whether the ALJ applied the correct legal standards in reaching the decision. Harrell v. Harris, 610 F.2d 355, 359 (5th Cir. 1980). Courts must therefore consider any questions of law *de novo*, and "no . . . presumption of validity attaches to the [Commissioner's]

conclusions of law, including determination of the proper standards to be applied in reviewing claims." Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### B.    The findings of the ALJ

The central dispute in this case concerns the finding of the ALJ that Plaintiff had the residual functional capacity to perform a significant range of jobs despite her psychiatric impairments. The Court finds that the ALJ reached this conclusion by a correct application of the five-step sequential evaluation process that the Social Security Administration has prescribed for the evaluation of disability claims. See 20 C.F.R. §§ 404.1520(a) and 404.920(a); see also Moore, 405 F.3d at 1211.

The findings of the ALJ at the first three steps of the evaluation are not in dispute. At the first step of the evaluation, the ALJ determined that Petitioner was not engaging in any substantial gainful activity at the time. At the second step, the ALJ determined that Plaintiff had medically determinable impairments that were "severe," that is, impairments that significantly limited her ability to perform basic work activities. The severe impairments noted by the ALJ were bipolar disorder with deficient personality and substance abuse in remission. At the third step of the evaluation, the ALJ found that the impairments did not meet or equal any of the listed impairments in Appendix 1 of the Social Security Regulations (20 C.F.R. Subpart P, Appendix 1). These findings are accepted by both parties as appropriate.

The controversy in this case surrounds the fourth and fifth steps of the review, and particularly the ALJ's findings as to Plaintiff's residual functional capacity. At the fourth step, the ALJ found that Petitioner was unable to perform her past relevant work. Plaintiff had prior work experience as a fast food worker, a mail clerk, a hotel clerk, a night auditor, a receptionist, and a cashier. In order to determine whether Plaintiff was capable of performing past relevant work, the ALJ was first required to determine her residual functional capacity.

As to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff's bipolar disorder would not limit her from performing "simple, unskilled, routine tasks with only incidental contact with the public." The ALJ found that Plaintiff had no physical limitations, and set forth the limitations caused by her mental condition as follows:

> The claimant has the following mental limitations as set forth in "part B" of the mental listings: mild restrictions of activities in daily living; the claimant cares for her children and performs household chores, but needs assistance with transportation; she has moderate difficulties in maintaining social functioning; she has hypomania due to bipolar disorder, has difficulty with stress, and is often anxious; she has moderate difficulties in maintaining concentration, persistence or pace; she has the ability to do simple tasks, but has impulse control problems; finally the claimant has had no episodes of decompensation of extended duration. Furthermore, the Claimant does not meet the "C criteria of Medical Listing 12.04.

R.23. The ALJ went on to observe that Plaintiff's most significant limitation was social, and that the complete record did not support "significant limitations in following a routine and adapting to changes in a typical unskilled work setting." Id. Based on this residual functional capacity determination, the ALJ concluded that Plaintiff was unable to maintain the level of interaction with the public that was required in those jobs.

Finally, at the fifth step the ALJ considered whether there were other jobs in the national economy that Plaintiff could perform, given her residual functional capacity, age, work experience, and education. In making this decision, the ALJ relied largely on the opinions of a vocational expert. The vocational expert testified that Plaintiff should be capable of performing the requirements of representative occupations such as Routing Clerk, Cleaner, and Library Page, as defined in the Dictionary of Occupational Titles. R.24-25. The vocational expert further testified that such jobs existed in significant numbers in both the national and local economies. Relying on the vocational expert's testimony, the ALJ determined that Plaintiff was capable of making an adjustment to other work. The ALJ therefore decided that Plaintiff had "not been under a disability, as defined in the Social Security Act," from June 1, 2005 through July 9, 2007, the date of his decision, and Plaintiff's application for benefits was denied.

### C.     The sufficiency of the evidence before the ALJ

The Court's own review of the record of the evidence in this case confirms that the ALJ properly reviewed the record as a whole and that his decision is supported by substantial evidence in that record.  The ALJ first weighed the Plaintiff's own testimony as to her experiences and limitations.  He then considered the medical evidence to evaluate Plaintiff's medically determinable conditions.  These records included the treatment records of Plaintiff's treating psychiatrist, as well as evaluations conducted by state agency consultants.  These records, taken as a whole, paint a picture consistent with that described by the ALJ in his residual functional capacity determination.

In assessing Plaintiff's residual functional capacity, the ALJ first considered Plaintiff's own testimony of her experience at her benefits hearing.  The ALJ found that the symptoms she described were supported to some extent by her medically determinable impairments, but found that her testimony was "not entirely credible" as to the intensity, persistence, and limiting effects of her symptoms.  R. 22.  At the hearing, Plaintiff testified that she suffered from bouts of depression that made it difficult to get out of bed, and that she also experienced anxiety attacks approximately once a week. R.382. Nevertheless, she was able to care for her two small children as a single mother (R.381-82), and was able to drive and do the primary grocery

shopping and meal preparation for her family (R.384). She sometimes relied on her mother or a good neighbor to remind her of appointments or help motivate her to get out of bed. R.383-84.

As to Plaintiff's medically determinable impairments, the ALJ primarily relied upon the findings of a psychological evaluatuion by John S. Muller, Ph.D, on March 23, 2006, and upon medical records from outpatient treatment at RiverEdge Behavioral Center between January 29, 2002 and March 20, 2007.

The conclusions in Dr. Muller's report are consistent with the ALJ's observation that Plaintiff's "most significant limitation is social." R.23. Dr. Muller diagnosed Plaintiff with: polysubstance dependence (in long-term sustained remission); bipolar disorder, Type I, most recent episode unspecified; and mixed personality disorder with paranoid, borderline, and antisocial traits. R.148. Based on Plaintiff's own reports, he observed that Plaintiff was living with her boyfriend of four years[1] and caring for two children, and that she was "generally good in providing for her children, making appropriate meals, and keeping the house clean." R.149. As to Plaintiff's limitations, Dr. Muller observed that

> She has episodes where she starts [to] sleep excessively or doesn't sleep at all. She tends to be suspicious and withdraw from people during states of depression, alienating them with excessive energy and chatter during

---

[1] At the time of her benefits hearing, over a year later, Plaintiff was apparently no longer living with her boyfriend.

9

>states of mania. It is likely that she will continue to have the aforementioned problems for the foreseeable future given the length of her emotional issues.

Id. The ALJ accurately summarized Dr. Muller's findings in his report, although as Plaintiff notes, the ALJ report uses the word "diagnosis" rather than "problems" in relating Dr. Muller's opinion that Plaintiff's psychological issues were likely to persist. This minor semantic difference is of no significance. It is evident that the ALJ was aware of the substance of Dr. Muller's evaluation.

The treatment records from RiverEdge and from Plaintiff's treating psychiatrist, Dr. Edward Olsen, give further support to the ALJ's residual functional capacity evaluation. For several years, Plaintiff met with Dr. Olsen on a monthly basis for review of her medications and brief therapy. R.351. The records of her monthly visits confirm that Plaintiff suffered from a bipolar disorder, manifested particularly in intermittent bouts of depression and managed by medication. There were periods when her mental condition was better or worse, but nothing in the records indicates that Plaintiff's mental condition was disabling. Nothing in her history with Dr. Olsen at RiverEdge contradicts the ALJ's conclusion that Plaintiff's disorder resulted in moderate difficulties in maintaining social functioning, hypomania, difficulty with stress, anxiety, and moderate difficulties in maintaining concentration, persistence or pace.

10

The course of Plaintiff's history with Dr. Olsen is illustrated by the period between January and June of 2006. On January 30, 2006, Plaintiff reported that she was "much improved" and "in good spirits," continued to experience moderate agitation. R.188. On February 14, 2006, she reported that she was "doing well except afternoon irritability and anxiety that responds to Xanax." R.186. On March 14, 2006, she had "no complaints" (R.184), but on April 10, 2006, she reported the onset of "anxiety, panic, and ruminative depression," with feelings of desperation. R.182. On May 9, 2006, she was "still very anxious." R.180. She returned for a second visit in May, on May 20, 2006, at which she complained of agitation and anxiety. R.178. Dr. Olsen observed that her mood was moderately depressed and anxious. Id. On June 6, 2006, Dr. Olsen noted that Plaintiff was stable on her current medications. R.171.

During most of her visits at RiverEdge, Dr. Olsen assigned Plaintiff a Global Assessment Functioning (GAF) score of 55, consistent with the sort of moderate symptoms and moderate difficulty in social functioning that the ALJ acknowledged. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 1994). On only two occasions, June 3, 2005, and August 12, 2005, did her GAF score fall below 50, to a range indicating serious symptoms and serious impairment in social or occupational functioning. R.255, 259.

Other evidence in the record, though not specifically cited in the ALJ's report, further supports the ALJ's conclusions as to Plaintiff's residual functional capacity. The record includes the results of two residual functional capacity assessments conducted by state agency consultants. The first such assessment was conducted by Allen Carter, Ph.D., on July 31, 2006. Dr. Carter's report notes moderate limitations as to sustained concentration and persistence, social interaction, and adaptation. R.289-90. He offers the following conclusions as to Plaintiff's functional capacity:

> 1. Not significantly limited.
> 2. Claimant has limited ability to sustain concentration for complex tasks but claimant is able to sustain concentration for simple tasks. Not a substantial loss.
> 3. Claimant has reduced ability to interact with large groups and co-workers but claimant has not [lost] substantial ability to interact appropriately with others.
> 4. Claimant has reduced ability to adapt to changes in work like setting.

R.291. These conclusions are entirely consistent with the conclusions of Dr. Muller and with the ALJ's findings.

Similar conclusions were reached in a residual functional capacity assessment conducted by Linda O'Neil, Ph.D., on April 4, 2006. Like Dr. Carter, Dr. O'Neil observed moderate limitations as to sustained concentration and persistence, social interaction, and adaptation. R.164-65. In her report she concludes that Plaintiff needed some supervision and help with decision-making and planning due to her limited concentration, persistence, and pace, but that Plaintiff was not significantly

limited. R.166. With regard to social interaction, Dr. O'Neil concludes that Plaintiff would be limited in her ability to deal with others and with stress or dangerous equipment, but that Plaintiff was not significantly limited "for basic interactions in a low-demand setting." R.166. Dr. O'Neill's report, together with the reports of Dr. Carter and Dr. Muller and the treatment records of Dr. Olsen, provides substantial evidence to support the ALJ's findings as to Plaintiff's residual functioning capacity.

### D.     Plaintiff's new evidence

Additional support for the ALJ's findings can be found in Dr. Olsen's records and "Mental Questionnaire," which were not available to the ALJ but were submitted later to the Appeals Council. Because these new records do not significantly alter the balance of evidence in the case, the Appeals Council did not err in refusing to remand the case to the ALJ for further consideration of the new evidence. When new evidence is presented to the Appeals Council that was not before the ALJ, "a reviewing court must consider whether the new evidence renders the denial of benefits erroneous." Ingram v. Commissioner of Social Sec. Admin.. 496 F.3d 1253, 1262 (11th Cir. 2007). In this case, review of the record as a whole, including the new records submitted to the Appeals Council, shows that the final decision of the Commissioner to deny Plaintiff's claim for benefits was still supported by substantial evidence.

The records of Plaintiff's later treatment with Dr. Olsen are not markedly different from records that the ALJ reviewed.  During this later period of treatment, Dr. Olsen continued to assess GAF scores between 55 and 60.  Plaintiff continued to report mood swings, with some bouts of dysphoria or depression.  It appears that Plaintiff may have experienced additional stress during this period due to a protracted conflict with her boyfriend.  See R.361, 364.  Nevertheless, there is nothing in these records inconsistent with the history established in the prior records of Dr. Olsen.

Dr. Olsen's questionnaire is also consistent with the other records in the case and the conclusions of the ALJ.  The questionnaire is a standardized form that predominantly consists of multiple-choice questions that Dr. Olsen marked or circled.  His responses confirm, yet again, that Plaintiff had a bipolar condition characterized by alternating depressive and hypomanic episodes.  These episodes were manifested in symptoms such as sleep disturbance, decreased energy, and difficulty concentrating on one hand, and hyperactivity, flight of ideas, and easy distractibility on the other hand.  R.351-52.  Dr. Olsen circled items to indicate his conclusion that Plaintiff's bipolar disorder resulted in marked restriction of activities of daily living, deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks, and repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or experience

exacerbation of signs and symptoms. R. 352-53. Dr. Olsen did not mark the item for "[m]arked difficulties in maintaining social functioning." Id. Where the questionnaire specifically asks whether Plaintiff is currently able to work or whether her limitations affect her ability to function in a work or work-like setting, Dr. Olsen writes "unknown." R. 353-54.

Dr. Olsen's questionnaire shows what the other evidence in the record shows, and supports the conclusions of the ALJ. It demonstrates that Plaintiff's bipolar personality disorder was a "severe" impairment as defined in 20 C.F.R. 404.1520(c), that is, an impairment that significantly limited her ability to perform basic work activities. It does not show, however, that this severe limitation prevented Plaintiff from performing any work activities. Based on the record as a whole, the ALJ found that Plaintiff retained the residual functional capacity to make an adjustment to other work. That assessment is supported by substantial evidence in the record. Accordingly, the Commissioner's decision is affirmed.

It is SO ORDERED this 30th day of September, 2009.

                                        S/ C. Ashley Royal
                                        C. ASHLEY ROYAL, JUDGE
                                        UNITED STATES DISTRICT COURT

chw